**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No.: 97-34158 (AMN) |
|     GREGORY BERTSOS | : | Chapter 7 |
|     NICOLIA BERTSOS, | : | |
|         *Debtors* | : | |
| | : | |
|     KARA S. RESCIA, | : | |
|     CHAPTER 7 TRUSTEE | : | |
|         *Movant* | : | |
| v. | : | |
|     HARRY BERTSOS, | : | |
|     ASPASIA ANOS BERTSOS | : | |
|     BLM, INC., LBM, LLC., | : | |
|         *Respondents* | : | |
| | : | Re: ECF Nos. 81, 89 |

**MEMORANDUM OF DECISION AND ORDER**
**GRANTING TRUSTEE'S MOTION TO**
**COMPROMISE CLAIM PURSUANT TO FED.R.BANKR.P. 9019**

This is not your typical Chapter 7 case. The debtors, Gregory Bertsos and Nicolia Bertsos ("Debtors") filed their Chapter 7 petition over twenty-two (22) years ago on October 15, 1997 ("Petition Date"), before the court used an electronic records system. Within a few months, the original Chapter 7 Trustee[1] filed a report of no distribution, the Debtors received Chapter 7 bankruptcy discharges, and the court closed the case. *See*, ECF Nos. 1-8. Thereafter, the Debtors' Chapter 7 case records were destroyed by operation of the judiciary's periodic records disposition procedure.[2]

In December 2020, the Debtors sought to reopen their Chapter 7 case to administer undisclosed assets. ECF No. 9. The court assumes the parties' familiarity

---

[1] The original Chapter 7 Trustee, Michael C. Daly is no longer a panel Chapter 7 bankruptcy trustee.
[2] Additional details regarding the judiciary's records disposition procedure are provided in the court's prior Order Granting Motion to Reopen Case for a Limited Purpose and Directing the United States Trustee to Appoint A Chapter 7 Trustee. See, footnote 1, ECF No. 46.

with its prior two Orders related to reopening the Chapter 7 case and expanding the newly appointed Chapter 7 Trustee's[3] duties upon reopening. See, ECF Nos. 46 and 72. Following the re-opening of the case and after a deadline for creditors to file proofs of claim passed, only one creditor, Virginia Johnson, filed a proof of claim asserting an unsecured, non-priority debt of $23,000 as of the 1997 Petition Date. POC 1-1.

Now, the Chapter 7 Trustee seeks approval of a compromise with the Debtors of the bankruptcy estate's interest in the previously undisclosed assets set forth in the following chart pursuant to Fed.R.Bankr.P. 9019 ("Motion"):

| Previously Undisclosed Estate Asset | Value asserted by Debtors in Amended Schedule A/B: Property – ECF No. 52 |
|---|---|
| A fifty (50%) percent ownership interest in BLM, Inc. ("BLM"), an entity operating a restaurant known as The Sandpiper ("Restaurant"); | Unknown |
| An option to purchase real property on which the Restaurant is located at 161 Cosey Beach Avenue, East Haven, Connecticut | $10.00 |
| A note payable from the sale of Village Inn | $50,000.00 |
| A fifty (50%) percent interest in Marlose Partnership | $0.00 |
| Interest in claims pending in the Connecticut Superior Court in the judicial district of New Haven as case number NNH-CV-20-6101644-S ("State Court Litigation"). | Unknown |

(collectively, the "Estate Interests"). ECF No. 81.

The State Court Litigation involves competing claims between the Debtors and Harry Bertsos, Aspasia Anos Bertsos, BLM, and LBM, LLC ("LMB")[4] (collectively, the

---

[3] On June 1, 2021, the court reopened the case for the limited purpose of allowing a Chapter 7 trustee to be appointed to determine if administration was possible on the unusual facts of this case. ECF No. 46. Following entry of that Order, the United States Trustee appointed Kara S. Rescia as Chapter 7 Trustee. ECF No. 51.

[4] LMB, LLC has been represented to be an entity owning the real estate on which the Restaurant is located.

2

"Harry Bertsos Parties") to ownership interests in BLM and LMB and the other Estate Interests.  The Harry Bertsos Parties deny the Debtors hold valid interests in these assets.

The Debtors did not disclose the Estate Interests when they filed their original Chapter 7 bankruptcy petition and schedules in 1997 and the failure to list the assets appears to be purposeful rather than inadvertent.  *See*, ECF Nos. 32, ¶ 17, 46.  However, when the Harry Bertsos Parties sought dismissal of the Debtors' State Court Litigation claims asserting the Debtors lacked standing to prosecute such claims because the claims were property of the bankruptcy estate, the Debtors moved to reopen their closed Chapter 7 case.

Having investigated the Estate Interests, the Trustee asserts a compromise with the Debtors for One Hundred Twenty Thousand ($120,000) Dollars is reasonable and in the best interest of the estate for a number of reasons.  ECF No. 81.  In determining that a settlement with the Debtors is preferred, the Trustee rejects any settlement with the Harry Bertsos Parties or any other course of action.  ECF No. 81.

Importantly, the Trustee notes this compromise would result in a one hundred (100%) percent recovery for creditors of the estate, plus post-Petition Date interest, plus the cost to administer the estate.

Additionally, the Trustee asserts this compromise resolves the substantial difficulty she faces in determining the extent of the Estate Interests.  ECF No. 81.  The Trustee acknowledges the Harry Bertsos Parties dispute the Debtors have any interest in the Estate Interests and the claims asserted in the State Court Litigation are aimed at resolving the ownership of these assets, and others as between the Debtors and the Harry Bertsos Parties.  The State Court Litigation claims involve convoluted business

dealings implicating both pre-petition and post-petition conduct, which the Trustee asserts makes it difficult to bifurcate the claims that might be solely pre-petition claims and, accordingly, property of the estate, with post-petition claims that are not property of the estate. ECF No. 81. The Trustee blames this overlap for the impossibility of settling with the Harry Bertsos Parties – who have offered an unspecified amount but insist on a complete resolution of the State Court Litigation – because she is unable to identify which claims she has authority to compromise, settle, or control. The Trustee has not presented the Harry Bertsos Parties' settlement to the court for approval because she cannot fulfill a settlement on their proposed terms – the complete resolution of all pending claims.

In addition to the difficulty regarding bifurcating the claims, the Trustee notes valuing the claims is challenging. The Trustee questions what an appropriate standard for valuing the claims would be given the unresolved dispute before the State Court regarding the validity and extent of the Debtors' claims. ECF No. 81. The Trustee argues a sale of the Estate Interests to a third-party or the Harry Bertsos Parties would not resolve this valuation problem because without a standard or basis for valuing the claims, the Trustee is unable to determine an appropriate purchase price or overbid. The Harry Bertsos Parties acknowledge the issues presented are thorny and complicated. *See*, ECF No. 89, p. 1.

If approved, the Trustee believes this compromise would allow her to expeditiously administer the estate and avoid future litigation. However, the Trustee believes litigating the State Court Litigation claims on behalf of the estate would be costly, take years, and potentially recover little for the estate. Additionally, without this compromise, the Trustee would need to employ appraisers, auctioneers, and/or special counsel to assist in

administering the Estate Interests. Because presently there are no assets in the bankruptcy estate, the Trustee has no resources to fund such administration or litigation. ECF Nos 81, 92. In contrast to these challenges, this compromise provides an efficient resolution.

Finally, the Trustee believes the Harry Bertsos Parties lack standing to object to the Motion as they are not creditors, parties in interest, or parties holding a pecuniary interest in the proceeding. The Harry Bertsos Parties disagree. They assert they have standing and object arguing the compromise is a disguised sale lacking the protections and ability to overbid as provided by the provisions of 11 U.S.C. § 363(b). They request the Motion be denied and the Debtors judicially estopped from benefitting from their 1997 failure to disclose the Estate Interests in their original bankruptcy schedules. ECF No. 89.

### *Standard of Review of Motions to Compromise*

"Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534, 538 (E.D.N.Y. 2017), aff'd, 734 Fed. Appx. 68 (2d Cir. 2018)(summary order). Rule 9019 of the Federal Rules of Bankruptcy Procedure provides, "on motion by a trustee, after notice and a hearing, the court may approve a compromise and settlement." Fed.R.Bankr.P. 9019. Rule 9019 is silent with respect to what the parties must show in order for the court to approve a proposed compromise or settlement. In the Second Circuit, courts consider the following factors:

    (1) the balance between the litigation's possibility of success and the settlement's future benefits;

5

> (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;
> (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;
> (4) whether other parties in interest support the settlement;
> (5) the competency and experience of counsel supporting, and [t]he experience and knowledge of the bankruptcy court judge reviewing, the settlement;
> (6) the nature and breadth of releases to be obtained by officers and directors; and
> (7) the extent to which the settlement is the product of arm's length bargaining.
> (the "Iridium Factors") *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007)(*citing, In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr.S.D.N.Y.2006).

A court "is not responsible for conducting a searching review to certify a settlement as fair and equitable." *In re SageCrest II, LLC*, 3:10CV978 SRU, 2011 WL 134893, at *9 (D. Conn. Jan. 14, 2011). And, the "settlement need not be the best agreement the [trustee] could obtain under the circumstances, but rather must fall within the reasonable range of litigation possibilities." *In re MatlinPatterson Glob. Opportunities Partners II L.P.*, 21-11255 (DSJ), 2022 WL 3702990, at *6 (Bankr. S.D.N.Y. Aug. 26, 2022)(*citing, In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y 2005). "In undertaking an examination of the settlement, [the] responsibility of the bankruptcy judge ... is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.1983).

### *Standing to Object to Motion to Compromise*

"Standing is a threshold issue in every federal litigation." *In re Teligent, Inc.*, 417 B.R. 197, 209 (Bankr. S.D.N.Y. 2009). "The standing of creditors to object to settlements under Rule 9019 is granted through the notice element of the rule." *In re Lynch*, 15-74795-AST, 2021 WL 1536392, at *4 (Bankr. E.D.N.Y. Apr. 15, 2021). Rule 2002, in turn,

6

provides for notice to parties in interest of a hearing on the approval of a compromise or settlement. Fed.R.Bankr.P. 2002(a)(3). "[A] 'real party in interest' is the one who, ..., has the legal right which is sought to be enforced or is the party entitled to bring suit." *In re Refco Inc.,* 505 F.3d 109, 117 (2d Cir. 2007)(internal citations and quotations omitted); *see also, In re Tower Park Properties, LLC*, 803 F.3d 450, 457 (9th Cir. 2015)("we have also recognized that our sister circuits have not interpreted "party in interest" to mean "anyone who might be affected by the bankruptcy proceedings"; rather, a party in interest is one who has a "legally protected interest that could be affected by a bankruptcy proceeding."). A party has standing to object to a motion pursuant to Fed.R.Bankr.P. 9019 if they are "directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *In re Dunne*, 684 Fed. Appx. 85 (2d Cir. 2017)(summary order); *see also, In re Teligent, Inc.,* 640 F.3d 53, 61 (2d Cir. 2011)(concluding non-creditors who lacked a financial stake in the outcome of the bankruptcy case lacked standing to objection to a Rule 9019 motion).

***The Doctrine of Judicial Estoppel***

The common law doctrine of judicial estoppel may "prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy." *BPP Illinois, LLC v. Royal Bank of Scotland Group PLC*, 859 F.3d 188, 192 (2d Cir. 2017). "Judicial estoppel is an equitable doctrine invoked at the court's discretion." *Black v. Buffalo Meat Serv., Inc.*, 15-CV-49S, 2021 WL 2043006, at *9 (W.D.N.Y. May 21, 2021), *aff'd*, 2022 WL 2902693 (2d Cir. 2022). In determining whether to apply judicial estoppel, a court considers whether "(1) a party's later position is clearly inconsistent with its earlier position, and (2) the party's former position has been adopted

in some way by the court in an earlier proceeding." *Ashmore v. CGI Group, Inc.*, 923 F.3d 260, 272 (2d Cir. 2019)(internal citations omitted). The Second Circuit has also often, "but not always, required a showing that the party asserting the two inconsistent positions would derive an unfair advantage against the party seeking estoppel." *Ashmore*, 923 F.3d at 272. Judicial estoppel "is intended to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." *Morgan Art Found. Ltd. v. Brannan*, 18CV8231ATBCM, 2020 WL 469982, at *8 (S.D.N.Y. Jan. 28, 2020)(*citing, Bates v. Long Island R. Co.,* 997 F.2d 1028 (2d Cir. 1993)).

"Application of this doctrine to dismiss a bankruptcy action is unusual. More commonly, judicial estoppel is invoked in post-bankruptcy litigation to prevent a plaintiff from asserting a claim that went undisclosed in a prior bankruptcy." *In re Bush*, 579 B.R. 688, 699 (Bankr. N.D.N.Y. 2017). "Precedent from other Circuits and districts … consistently hold that a debtor-plaintiff that knows the facts of a claim (whether formally pursued when they file for bankruptcy) and fails to disclose it in bankruptcy court, the debtor-plaintiff is estopped from litigating the undisclosed claim." *Black v. Buffalo Meat Serv., Inc.*, 15-CV-49S, 2021 WL 2043006, at *17. Because a petition can provide the basis for the discharge of debts by a bankruptcy judge, the entry of a discharge based on a debtor's petition and schedules which fail to list an asset can satisfy the requirement that the party's position was adopted in some way by the prior court. *See, Whitehurst v. 230 Fifth, Inc.,* 998 F. Supp. 2d 233, 258 (S.D.N.Y. 2014); *see also, In re Johnson*, 345 B.R. 816, 822 (Bankr. W.D. Mich. 2006)("court implicitly accepted the statements in the Debtor's schedules and statement of financial affairs when it granted her a discharge of debts"); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1048 (8th Cir.2006) ("[W]here the

8

bankruptcy court issues a 'no asset' discharge, the bankruptcy court has effectively adopted the debtor's position.").

### Discussion
### The Iridium Factors Weigh in Favor of Approval

Iridium Factors 1, 2, 3, 5, and 7 weigh in favor of approving the Trustee's Motion. The court credits the Trustee's evaluation of the State Court Litigation claims and the difficulties pursuing them. Factor 1 – balancing the litigation's possibility of success with the settlement's future benefits – weighs in favor of approval. This compromise results in a one hundred (100%) percent distribution to unsecured creditors which outweighs the Trustee's estimate of probability of success in the State Court Litigation. It is not the role of this court to conduct a mini-trial on all facts (such as the potential for success in the State Court Litigation) or determine all issues of law, but rather to canvass the issues to determine if this settlement falls within the range of reasonable results.

The Trustee has persuasively shown that Factor 2 – the likelihood of complex and protracted litigation – is high and thus this factor weighs in favor of approval of the compromise. The Harry Bertsos Parties' twenty-five-page memorandum in opposition to this Motion is evidence in of itself of the protracted litigation the Trustee faces in this case. The Chapter 7 trustee is obligated to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." *In re Dinino*, 639 B.R. 31, 34 (Bankr. W.D.N.Y. 2022). The Trustee represents that seeking approval of this compromise fulfills her duty to seek expeditious resolution of the case.

Significantly, Factor 3 – the paramount interests of the creditors – weighs in favor of approval. No creditor has objected. And, affording deference to the Trustee's business

9

judgment, the court is persuaded the compromise is likely the most expeditious path to a one hundred (100%) distribution.

Factor 5 – the competency and experience of counsel and the court – weighs in favor of approval because all parties involved: the Trustee, the Debtor's counsel, and the Harry Bertsos Parties are competent and experienced.

Factor 7, like Factor 5, weighs in favor of approval. The Trustee's representations of the extensive analysis and discussions that occurred between the parties leaves the court with little doubt that this compromise was the result of arm's length bargaining.

Factor 6 is not applicable to the circumstances of this case.

Factor 4 – whether other parties in interest support the settlement – does not outweigh Factors 1, 2, 3, 5, and 7. Assuming the Harry Bertsos Parties qualify as parties in interest, their objection does not sufficiently outweigh the benefits of the compromise to the estate. The compromise would limit the continued litigation in this court and prevent increased administrative cost to be borne by the bankruptcy estate at the expense of creditors. The estate has no funds to engage special counsel to prosecute the State Court Litigation and the court sees no basis to direct the Trustee to prosecute litigation the Trustee believes is unlikely to result in a recovery. The lack of support for this compromise by the Harry Bertsos Parties does not outweigh the other factors discussed. The court concludes the proposed compromise is in the best interest of the bankruptcy estate and does not "fall[] below the lowest point in the range of reasonableness." *WorldCom*, 347 B.R. at 137.

***The Harry Bertsos Parties Lack Standing***

The Harry Bertsos Parties are not creditors. They do not have a claim against the bankruptcy estate or an expectation of a distribution from its assets. Thus, to have standing to object to the Motion they must be parties-in-interest. But the Harry Bertsos Parties lack a legally protected interest that an order approving the compromise might directly and adversely affect pecuniarily. The Harry Bertsos Parties are plaintiffs in the State Court Litigation, which was commenced before the Debtors' case was reopened. If the Motion is granted, the State Court Litigation continues essentially unchanged from its status before this case was reopened. It can hardly be argued there is prejudice to a party continuing litigation that party itself initiated. If the Motion is denied, the State Court Litigation is delayed until the Chapter 7 Trustee decides an alternative route (which can include prosecuting the State Court Litigation, abandoning the interest in the Litigation, selling, or compromising the interest with the Harry Bertsos Parties or a third party). Additionally, it is not clear the Motion's denial will result in a cessation of the State Court Litigation because, as the Trustee asserts, the Debtors have claims against the Harry Bertsos Parties arising post-petition. Any such post-petition claims would be unaffected by either a grant or denial of this Motion.

Under either scenario – a grant or denial of the Motion – it is not the bankruptcy court order that causes harm to the Harry Bertsos Parties, but rather the existence of the State Court Litigation that is the source of the (potential) harm. The court is unpersuaded by the Harry Bertsos Parties' arguments to the contrary.

Because the Harry Bertsos Parties are not directly and adversely affected pecuniarily by a bankruptcy order approving the compromise, they fail to meet the

definition of a party in interest. And, therefore, they do not have standing to object to the Trustee's motion to compromise.

But, even assuming they met the party in interest definition, the court concludes, after consideration of the Harry Bertsos' objection, approval of the Trustee's motion is warranted. The Harry Bertsos Parties' objection asserts the Motion should be denied because judicial estoppel should be applied to prevent the Debtors from receiving a benefit in this case and the compromise is a disguised sale under § 363. Neither argument is persuasive for the reasons set forth below.

### *Judicial Estoppel Does Not Bar Approval*

Judicial estoppel does not apply here. Judicial estoppel is commonly employed to prevent a litigant from advancing a position in a subsequent litigation that is inconsistent with a prior litigation. Here, this proceeding is not the "subsequent" litigation. The State Court Litigation is the proper forum for the Harry Bertsos Parties to raise judicial estoppel as a defense to the Debtors' claims. And, nothing in this Order prevents them from doing so.

But the court declines to extend the application of judicial estoppel to the circumstances here – to prevent the Trustee from settling or compromising with the Debtors in order to pay all creditors. Adopting the Harry Bertsos Parties' position would unfairly prejudice bankruptcy estate creditors by limiting the Trustee's options to recover and liquidate estate assets. Further their argument appears to assume the Trustee would settle with the Harry Bertsos Parties if prohibited from compromising with the Debtors and not simply abandon the Estate Interests as burdensome. The Trustee acknowledges she has no resources to hire special counsel and/or accountants or auctioneers to either

prosecute the State Court Litigation or sell the Estate Interests to a third-party. If abandoned, the Estate Interests could revert to the Debtors, nonetheless.

The Harry Bertsos Parties stress how a settlement with them is better than the one the Trustee proposes with the Debtors. But, the Trustee has not sought approval from the court of the Harry Bertsos Parties' settlement offer, and the court can only act upon the Motion before it. The Harry Bertsos Parties did not provide the court with any authority – and the court has not independently found any – empowering a court to direct a Chapter 7 Trustee to settle with a particular party. In contrast, a judge should give deference to a trustee's proposed settlement and should "not substitute its judgment for that of the trustee." *In re DiStefano*, 16-10694, 2022 WL 4086979, at *3 (Bankr. N.D.N.Y. Sept. 6, 2022); *see also, In re Milazzo,* 450 B.R. 363, 376 (Bankr. D. Conn. 2011)("judge should not simply 'rubber stamp' the trustee's proposal. However, the bankruptcy judge ... is not to substitute [her] judgment for that of the trustee, and the trustee's judgment is to be accorded some deference.")(internal citations omitted).

Further the court disagrees the Debtors are receiving an unfair advantage or benefit. The failure to properly disclose the Estate Interests forced the Debtors to return to this court, incur expenses in reopening the case, and surrender control over the fate of the Estate Interests to the Chapter 7 Trustee. Now, the Debtors are paying $120,000 in non-estate funds to recover rights in the Estate Interests that have known and disputed claims to ownership. The Trustee acknowledges the Bankruptcy estate's interest in the Estate Interests, especially the State Court Litigation, is – at best – murky and undefined. The Trustee is proposing a transfer of whatever rights the bankruptcy estate has in the Estate Interests without the need to undergo costly litigation to define and value those

rights, and without any representation or warranty they have any value at all. Requiring the Trustee to value or define the extent of the bankruptcy estate's interest has the potential to be burdensome. Such an obligation would require resources to prosecute litigation and could result in a determination that the bankruptcy estate has no actual interest in the Estate Interests. This compromise, however, transfers the risk that there is no interest or that the value of the Estate Interests is zero to the Debtors.

By approving this Motion, the court will unquestionably be allowing the Debtors to regain interest in assets they failed to disclose. This outcome, at first blush, is inconsistent with the idea that debtors should not benefit from non-disclosure. But, upon approval, it does not necessarily follow that the Debtors will receive any benefits in the future, monetary or otherwise, through regaining control over the Estate Interests. As mentioned, the extent and value of those interests is unknown and requires further litigation. The State Court Litigation could result in a determination the Debtors lack any interest or that the value of the interest is nothing.

Here, the Debtors received Chapter 7 discharges on February 20, 1998. ECF No. 6. Subsection (e) of Bankruptcy Code § 727 limits the ability of a "trustee, a creditor, or the United States Trustee" from requesting a revocation of a discharge to within a year of the granting of such discharge. 11 U.S.C. § 727(e). Due to the passage of time in this case, the provisions of the Bankruptcy Code eliminate what may have been the appropriate punishment for the Debtors' non-disclosure. However, the Trustee's proposal appears to make lemonade out of a case with lemon-like facts. And, the court disagrees the result here is taking the Debtors' non-disclosure of assets lightly. The court is also not persuaded the Debtors are receiving an unfair advantage or benefit if this Motion is

14

approved. It is highly probable the Harry Bertsos Parties will assert (and possibly succeed on) the defense of judicial estoppel in the State Court Litigation to eliminate the Debtors' claims. There is no need to enter an order prohibiting the Debtors from receiving any portion of a surplus (if there is one) in this case, because contrary to the caselaw cited by the Harry Bertsos Parties, here, it is the Debtors' own money funding the compromise. In essence, the Harry Bertsos Parties are asking this court to craft a penalty not provided for in the case law applying the doctrine of judicial estoppel. The court declines to craft such a penalty, to conclude the Debtors are receiving an unfair advantage, and to expansively employ judicial estoppel to the circumstances here.

### *Trustee Is Not Required to Proceed Under § 363*

The court finds the Harry Bertsos Parties' argument that the proposed Motion must be treated as a sale of estate property under Bankruptcy Code § 363 and sold to the highest bidder unpersuasive. But, it is a close call. To be sure, there is a transfer of estate assets for monetary consideration ($120,000). And if that were the only term of the compromise, the court might agree the transaction is a sale. There is more to this compromise, however. The Trustee is also resolving any dispute between the bankruptcy estate and the Debtors as to which claims belong to the estate and which might be owned by the Debtors arising from post-petition circumstances. The court credits the Trustee's assertion that she has evaluated the State Court Litigation claims and finds they are intertwined and enmeshed in both pre- and post-petition facts. The court is unpersuaded the solution the Trustee negotiated to resolve the ambiguities, eliminate the risk to the bankruptcy estate, and reduce the costs involved in administering this estate is not a compromise or settlement.

The authorities the Harry Bertsos Parties cite for the proposition that a trustee must proceed under § 363 when a settlement is in essence a sale of estate assets are not binding on this court. *See*, ECF No, 89, p. 10 (*In re Mickey Thompson Entertainment Group*, 292 B.R. 415 (9th Cir. BAP 2003); *In re DiCostanzo*, 2008 WL 4068897 (C.D. Calif. 2008), *aff'd*, 399 Fed.Appx. 307 (9th Cir. 2010); *In re Moore*, 608 F.3d 253 (5th Cir. 2010)). The Second Circuit has not opined on whether a sale of estate assets to a bankruptcy debtor requires a trustee to procedure under § 363 rather than Rule 9019. But even if the court considers the Ninth Circuit authorities, the proposition is not as broad as the Harry Bertsos Parties articulate. In more recent decisions, the Ninth Circuit and the Ninth Circuit BAP have clarified the rule in *Mickey Thompson* is not broad, and a court is not required to apply § 363 procedures to a sale of claims under Rule 9019, but rather it is a matter of the court's discretion. *See, Adeli v. Barclay (In re Berkeley Delaware Court, LLC)*, 834 F.3d 1036 (9th Cir. 2016)("a bankruptcy court has the discretion to apply § 363 procedures to a sale of claims pursuant to a settlement approved under Rule 9019"); *In re Open Med. Inst., Inc.*, 639 B.R. 169, 182 (Bankr. App. 9th Cir. 2022)("the purpose of the *Mickey Thompson* rule is to maximize estate assets by requiring trustees and bankruptcy courts to consider whether there is a more attractive solution than that which the trustee has negotiated.*"); Isom v. Hopkins (In re Isom)*, BAP No. ID-19-1198-BGL, 2020 WL 1950905, at *9 (9th Cir. BAP Apr. 22, 2020) ("Whether to impose formal sale procedures, however, is ultimately a matter of discretion that depends on the dynamics of the particular situation.... [T]he court need not implement bidding procedures and an auction if the case does not call for it."), *aff'd*, 836 F. App'x 562 (9th Cir. 2020).

The court declines to conclude the Trustee is required to conduct a sale or auction pursuant to § 363(b) under these circumstances. This is an atypical Chapter 7 case. And, even if the court were to consider the proposed resolution under the standards employed in evaluating sales under § 363, the court would approve the Trustee's proposal. "In approving a transaction conducted pursuant to [§] 363(b)(1), courts consider whether the debtor (or trustee) exercised sound business judgment. *In re Allard*, 18-14092 (MG), 2019 WL 4593854, at *4 (Bankr. S.D.N.Y. Sept. 20, 2019)(citing, Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 144-45 (2d Cir. 1992)). "In this Circuit, the sale of an asset of the estate under § 363(b) is permissible if the judge determining [the] § 363(b) application expressly find[s] from the evidence presented before [him or her] at the hearing [that there is] a good business reason to grant such an application." *In re Iridium Operating LLC*, 478 F.3d at 466 (internal citations omitted). Here, the Trustee has articulated numerous hurdles that impede her administration of these Estate Interests and the valuation and bidding difficulties she would face in conducting a proper sale or auction. These are sound business justifications for proceeding with the Debtors as proposed. Likewise, the Trustee has articulated reasons why she is not seeking to accept the settlement offered by the Harry Bertsos Parties. In the Fifth Circuit case, *In re Moore*, relied upon by the Harry Bertsos Parties, the court concluded the trustee was required to proceed under § 363. In that case, it was uncertain whether there would be a meaningful distribution to unsecured creditors. The court concluded the trustee should have considered proceeding under § 363 when a creditor submitted a higher offer due to the trustee's obligation to maximize assets for the estate and to act in the best interests of

creditors. *In re Moore*, 608 F.3d at 266. That case is factually distinguishable from the circumstances presented in this case. The Trustee's proposed compromise will pay 100% of the claims and administrative costs. The need for an auction and overbid is not present. The court finds unpersuasive the Harry Bertsos Parties' arguments that the Trustee is required to conduct a sale pursuant to § 363, rather than a compromise under Rule 9019 in the circumstances presented here.

The court has considered all other arguments and finds them to be without merit.

### *Conclusion*

This case has an unfortunate procedural history and lacks a reliable record. The Trustee has proposed a resolution that will enable her to expeditiously administer the case and pay 100% of filed claims, with post-petition interest, in addition to costs of administration. After consideration of the *Iridium* Factors, the court concludes the Motion to Compromise is fair, falls above the lowest point of reasonableness, and should be approved.

This is a final order subject to rights of appeal. The time within which a party may file an appeal of a final order of the bankruptcy court is fourteen (14) days after it is entered on the docket. *See*, Fed.R.Bankr.P. 8002(a)(1).

Accordingly, it is hereby

**ORDERED**: That, the objection filed by BLM, Inc., Aspasia Anos Bertsos, Harry Bertsos, LBM, LLC, is **OVERRULED**; and it is further.

**ORDERED**: That, the Trustee's motion for authority to enter into a compromise pursuant to Fed.R.Bankr.P. 9019, ECF No. 81, is **GRANTED** as set forth herein; and it is further

**ORDERED**: That, Trustee is authorized to enter into the compromise described in the Motion with the debtors, Gregory Bertsos and Nicolia Bertsos, regarding certain assets of the Estate, including a 50 percent ownership in The Sandpiper, BLM, Inc. dba The Sandpiper; option to purchase 161 Cosey Beach Avenue, East Haven; note payable from sale of Village Inn; a fifty percent interest in Marlose Partnership (collectively the "Assets"); and the Bankruptcy Estate's interest in certain state court litigation pending in the New Haven Superior Court as Case No. NNH-CV20-6101644-S (the "State Court Litigation"), as more particularly stated in the Trustee's Motion for the gross sum of One Hundred Twenty Thousand and 00/100 ($120,000.00) Dollars (the "Settlement Amount"); and it is further

**ORDERED**: That, counsel for the Debtors shall turn over the Settlement Amount to the Trustee within seven (7) days of entry of this Order; and it is further

**ORDERED**: That, upon payment of the Settlement Amount, the Trustee shall convey to the Debtors the Assets including (i) any and all rights to the claims, counterclaims, defenses asserted in *Harry Bertsos, et al. v. Grigorios Bertsos*, NNH-CV20-6101644-S, (ii) any and all claims that could have been or in the future can be asserted in said action, and (iii) any and all other claims of Grigorios Bertsos or Nikolia Bertsos against Harry Bertsos, Aspasia Anos Bertsos, BLM Inc., and LBM, LLC, or any of their insiders or affiliates, and it is further

**ORDERED**: That, the Trustee shall have the authority to execute and deliver such documents as are necessary to effectuate the compromise approved herein; and it is further

**ORDERED**: That, the Debtors shall have no right to any exemption in the Assets or State Court Litigation or to assert a claim, of any sort, against the Trustee and/or the Bankruptcy Estate, including, but not limited to, all claims arising pre-petition or post-petition, secured or unsecured, general, priority and/or administrative, or under 11 U.S.C. § 502(h) and Rule 3002(c)(3) of the Federal Rules of Bankruptcy Procedure.

Dated this 30th day of September, 2022, at New Haven, Connecticut.



Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut